UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHY MONROE,

    Plaintiff,

v.                                                   Case No. 8:22-cv-1333-WFJ-JSS

GROW FINANCIAL FEDERAL
CREDIT UNION,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Grow Financial Federal Credit Union's Motion to Dismiss (Dkt. 18) Plaintiff Kathy Monroe's Amended Complaint (Dkt. 14). Plaintiff has responded in opposition (Dkt. 20), and Defendant has not replied. Upon careful review, the Court denies the Defendant's Motion.

### BACKGROUND

**I.    The Underlying Facts**

The Court recounts the facts as alleged in Plaintiff's Amended Complaint. On June 30, 2020, Plaintiff made a reservation with 2 College Brothers Residential & Commercial Moving and Storage (the "Moving Company") for moving services. Dkt. 14 at 4. Plaintiff claims that she made a $100 deposit and orally agreed to pay

$200 to each of the three movers who assisted her. *Id.* at 5–6, 15. Thus, in total, Plaintiff agreed to pay the Moving Company $700 for her July 1, 2020, move.

On July 4, 2020, however, the Moving Company sent a request to Defendant to process a debit from Plaintiff's Checking Account for $3,371. *Id.* at 5. Defendant completed the Moving Company's request, resulting in an overdraft of Plaintiff's Checking Account in the amount of $3,212.53. *Id.* Defendant then transferred $3,212.53 from Plaintiff's Money Market Account to Plaintiff's Checking Account to cover the overdraft. *Id.*

On July 7, 2020, Plaintiff disputed the Moving Company's charge. *Id.* at 6. Defendant issued a provisional credit of $3,371 to Plaintiff's Checking Account pending investigation. *Id.* On August 27, 2020, Defendant denied Plaintiff's claim. *Id.* Plaintiff maintains that Defendant failed to perform a reasonable or good faith investigation of the dispute. *Id.* at 17.

Notwithstanding, on September 4, 2020, Defendant reversed the provisional credit, resulting in a negative balance of $3,138.44 in Plaintiff's Checking Account. *Id* at 6. The same day, Defendant transferred $3,123.27 from Plaintiff's Money Market Account to Plaintiff's Checking Account to cover the negative balance caused by Defendant's provisional credit reversal. *Id.* For unknown reasons, this $3,123.37 transfer was also reversed on September 4, 2020, resulting in a negative balance of $3,158.27 in Plaintiff's Checking Account. *Id.* at 7.

On September 23, 2020, Plaintiff's Money Market Account showed a balance of $3,158.27 with an available funds balance of $0. *Id.* In other words, Defendant had frozen the funds in Plaintiff's Money Market Account. *Id.* Plaintiff's Checking Account held a negative balance of $3,219.09 as of October 14, 2020. *Id.*

By October 25, 2021, Defendant informed Plaintiff that the negative balance reflected in Plaintiff's Checking Account associated with the disputed Moving Company charge ($3,158.27) was being reported by Defendant to credit reporting agencies as a charge off. *Id.* at 7–8. Defendant reported the charge off to Equifax Information Services, Inc. ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"). *Id.* at 10. It is unclear whether Defendant reported the charge off to any other credit reporting agencies.

On September 28 and October 25, 2021, Plaintiff disputed the reported charge off with Equifax, Experian, and Trans Union. *Id.* Plaintiff claims that despite receiving notice of Plaintiff's dispute from all three agencies, Defendant has willfully "failed to perform reasonable investigations[,] . . . failed to remove and/or correct the inaccurate information [Defendant reported], and continue[d] to report derogatory inaccurate information about Plaintiff to the credit reporting agencies." *Id.* at 10–12. Plaintiff further claims that "[a]s a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost credit

opportunities, harm to credit reputation and credit score, and emotional distress." *Id.* at 13.

## II. The Complaint

On September 20, 2022, Plaintiff filed her Amended Complaint. *Id.* at 1. Therein, Plaintiff brings two counts against Defendant: a violation of the Fair Credit Reporting Act ("FCRA") for inaccurately reporting the negative balance in Plaintiff's Checking Account as a charge off (Count I), and a violation of the Electronic Funds Transfer Act ("EFTA") for effectuating an unauthorized electronic fund transfer from Plaintiff's Checking Account to the Moving Company (Count II). *Id.* at 8–21.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they

are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint in its entirety. Dkt. 18 at 1. Essentially, Defendant argues that reporting the negative balance in Plaintiff's Checking Account as a charge off to Equifax, Experian, and Trans Union was accurate and that Defendant had authorization to pay the charge requested by the Moving Company. *Id.* at 15–17. The Court will consider each point in turn.

**I.  Plaintiff's FCRA Claim**

The FCRA seeks to ensure a system of "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). To achieve this goal, the FCRA imposes duties on the credit reporting agencies ("CRAs") generating consumer credit reports and those entities that furnish credit information to the CRAs. *See id.* §§ 1681i, 1681s–2. The FCRA imposes two affirmative duties on furnishers of information. Furnishers must (1) provide CRAs with accurate information in the first instance, *see id.* § 1681s–2a, and (2) conduct an investigation if a consumer disputes information the furnisher has reported to a CRA is inaccurate or incomplete, *see id.* § 1681s–2(b).

When a consumer disputes the completeness or accuracy of a credit report with a CRA, the CRA must notify the furnisher of the disputed information. *Id.* § 1681i(2). Once the furnisher receives notice of the dispute, § 1681s–2(b) requires the furnisher to investigate the disputed information, review all the relevant information provided by the CRA, and report the results of the investigation to the CRA. *Id.* § 1681s–2(b)(1)(A)–(C). If during the investigation the furnisher finds that the information it previously provided was inaccurate or incomplete, the furnisher must report those results to all CRAs to which it furnished the information initially. *Id.* § 1681s–2(b)(1)(D). The furnisher must also modify, delete, or permanently block the inaccurate or incomplete information from its reporting. *Id.* § 1681s–2(b)(1)(E).

Section § 1681s–2(b) provides consumers with a private right of action against a furnisher who breaches its obligations to conduct a reasonable investigation and to correct inaccurate or incomplete information following an investigation. *See Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *Bauer v. Target Corp.*, No. 12-cv-00978-AEP, 2013 WL 12155951, at *6 (M.D. Fla. June 19, 2013).

To state a claim against a furnisher, the consumer must allege four things. First, the consumer must make some "supportable allegation that the reported information is inaccurate or incomplete." *Leones v. Rushmore Loan Mgmt. Servs.*

*LLC*, 749 F. App'x 897, 901 (11th Cir. 2018). Second, the consumer must allege that he notified the CRA that he is disputing the completeness or accuracy of the information in his credit report. Third, the consumer must allege that the CRA in turn notified the furnisher of the dispute. Finally, the consumer must allege that the furnisher breached one of its duties under § 1681s–2(b)(1)(A)–(E). *See Mosley v. Monterey Fin. Servs.*, LLC, No. 16-cv-3614-MHC-AJB, 2017 WL 8186861, at *3 (N.D. Ga. May 10, 2017) (setting forth the four elements). The first three factors are essentially prerequisites that trigger a furnisher's duties to investigate and correct its reporting. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Arianas v. LVNV Funding, LLC*, 54 F. Supp. 3d 1308, 1311 (M.D. Fla. 2014).

Here, Plaintiff has plausibly alleged the elements of an FCRA violation. Because Section 1681s–2 does not define what constitutes accurate reporting, courts applying this provision in actions against furnishers have often looked to suits brought against CRAs under § 1681e(b) to define accuracy. *See, e.g.*, *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37–38 (1st Cir. 2010); *Saunders*, 526 F.3d at 148. Section 1681e(b) requires CRAs to strive for "maximum possible accuracy" in their reporting, which courts have interpreted to mean the reported information "must be factually true and also unlikely to lead to a misunderstanding." *Erickson v. First Advantage Background Servs. Corp.*, 981

F.3d 1246, 1252 (11th Cir. 2020); *see also Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). By the same token, reported information is inaccurate if it is "factually incorrect, objectively likely to mislead its intended user, or both." *Erickson*, 981 F.3d at 1252.

Similarly, courts have determined that information may be inaccurate or incomplete under § 1681s–2(b) if it is "patently incorrect" or is "technically accurate" but "presented in such a way that it creates a misleading impression." *Saunders*, 526 F.3d at 148; *Sepulvado*, 158 F.3d 890 at 895; *Gorman*, 584 F.3d at 1163; *accord Bush v. Roundpoint Mortg. Servicing Corp.*, 122 F. Supp. 3d 1347, 1351 (M.D. Fla. 2015); *Bauer*, 2012 WL 4054296, at *3; *Mosley*, 2017 WL 8186861, at *2. To be actionable, the information must be misleading in a material sense, meaning it must "mislead[ ] in such a way and to such an extent that it can be expected to [have an] adverse[ ] effect" on the consumer. *Saunders*, 526 F.3d at 148. Further, whether reported information is materially misleading is typically a factual issue for a jury to resolve. *Bush*, 122 F. Supp. 3d at 1351 n.3.

That being the case, Plaintiff has made a supportable allegation that the reported charge off is inaccurate or incomplete. Plaintiff has alleged that it was within Defendant's authority—an authority Defendant regularly and consistently

exercised—to transfer funds among her various accounts in order to cover overdrafts; that Defendant initially transferred the required funds from Plaintiff's Money Market Account to Defendant's Checking Account to cover the disputed charge only to reverse the transfer and freeze the funds in Plaintiff's Money Market Account; that Defendant's actions impeded Plaintiff's ability to resolve the negative balance in Plaintiff's Checking Account; and that Plaintiff had the necessary funds in her Money Market Account to pay the negative balance in her Checking Account for the entire time that this dispute was ongoing. Accepting these allegations as true, Defendant was largely responsible for Plaintiff's failure to cover her negative Checking Account balance. Defendant's continued reporting of a charge off therefore could have given potential creditors a false impression concerning Plaintiff's credit repayment history, financial responsibility as a debtor, and overall credit worthiness. In sum, Plaintiff has plausibly alleged an inaccuracy in Defendant's reporting.

     Plaintiff has also properly pled the remaining elements of an FCRA claim. First, Plaintiff alleged that she notified Equifax, Experian, and Trans Union of her dispute concerning the accuracy of Defendant's report. Second, Plaintiff has alleged that Equifax, Experian, and Trans Union notified Defendant of the dispute. And third, Plaintiff has alleged that Defendant has "failed to perform reasonable investigation[s] [following Plaintiff's dispute,] . . . failed to remove and/or correct

the inaccurate information [Defendant reported], and continue[d] to report derogatory inaccurate information about Plaintiff to the credit reporting agencies." Dkt. 1 at 10–12.[1]

Accordingly, Plaintiff has pled a triable FCRA claim, and the Court is without authority to dispose of it at the motion to dismiss stage.

## II. EFTA Claim

The EFTA aims to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Thereunder, "[a]n electronic fund transfer is a 'transfer of funds . . . which is initiated through an electronic terminal . . . so as to . . . authorize a financial institution to debit or credit an account.'" *Grillasca v. Amerada Hess Corp.*, No. 8:05-CV-1736-T-17TGW, 2006 WL 3313719, at *2 (M.D. Fla. Nov. 14, 2006) (citing 15 U.S.C. § 1693(a)(7)). Upon receiving adequate notice of a potential electronic fund transfer error from a consumer—such as an unauthorized transfer—the EFTA dictates that "the financial institution shall

---

[1] At this stage, it is enough for a plaintiff to allege that the furnisher failed to conduct a reasonable investigation by pointing to the errors in the post-investigation reporting. *See, e.g., Rayburn v. Equifax Info. Servs., LLC*, No. 18-cv-3127-TCB-CMS, 2019 WL 1225212, at *4–5 (N.D. Ga. Jan. 9, 2019); *see Calhoun v. Certegy Check Servs., Inc.*, No. 14-cv-1020-T-27MAP, 2014 WL 4146886, at *3 (M.D. Fla. Aug. 20, 2014) (finding allegation that furnisher's investigation was unreasonable because it failed to uncover and resolve the alleged inaccuracy was sufficient to state a claim). The details of a Defendant's investigative procedures are solely within its knowledge and will not be revealed until Plaintiff's begin discovery. *See Rayburn*, 2019 WL 1225212, at *4–5.

investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." 15 U.S.C. § 1693f(a). "In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized." *Id.* § 1693g(b).

That said, even if the Court were to consider the documents attached to Defendant's Motion to Dismiss, the Court could not find that Defendant has met its burden of establishing that the subject electronic fund transfer was authorized as a matter of law. Indeed, the validity of the Moving Company's use of Plaintiff's charge authorization (which Defendant alleges authorized it to effectuate the subject transfer) rests on the presumption that the Moving Company was truthful when it explained to Defendant "how [Plaintiff] increased the scope of the move from a few items to an entire household, with many heavy items, that had to be moved downstairs and [needed] a second truck." Dkt. 18 at 6. Plaintiff directly disputes this fact. She claims that she agreed to pay $700, flat. And, at this stage, the Court must accept this contention as the truth. *See Pielage*, 516 F.3d at 1284.

Relatedly, Plaintiff claims that Defendant failed to perform a reasonable or good faith investigation. Dkt. 14 at 18. Of particular note is Plaintiff's suggestion that the Defendant's investigation failed to consider whether there was merit to

Plaintiff's claim that she paid the Moving Company (presumably $700) directly in cash for the totality of their services. Dkt. 14 at 18. Defendant does not dispute or even address this line of argument. And, from the face of Defendant's Motion to Dismiss, the Court can only conclude that Defendant more or less asked the Moving Company for its side of the story and accepted it as definitive.

It should be noted that § 1693f(d) provides that "[i]f the financial institution determines after its investigation . . . that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings[.]" Perhaps this explanation sheds light on the issue of whether Defendant carried out an adequate investigation. Notwithstanding, it is absent from the record (as most evidence is at the motion to dismiss stage). Thus, even if it were appropriate for the Court to consider this type of evidence at the motion to dismiss stage, it could not do so.

This, in many respects, speaks to the issue that predominates Defendant's Motion to Dismiss. Defendant essentially argues that Plaintiff's claims fail because her factual contentions concerning her card authorization and Defendant's reporting are incorrect.[2] As stated above, all facts are accepted as true and viewed

---

[2] This is best exemplified by Defendant's argument concerning Plaintiff's EFTA claim, which states that:

> Plaintiff alleges that Grow violated the EFTA by paying the Mover $3,371.00 from checking account without "authorization" after conducting investigation and reversing provisional credit based on documents provided by the Mover. First Amended Complaint, ¶¶ 70, 71, 72-74; See Exhibit No. 4. Indeed, Plaintiff, rather boastfully, alleges that "No document exists authorizing 2 Brothers Moving to

in the light most favorable to the Plaintiff at the motion to dismiss stage. *Pielage*, 516 F.3d at 1284.

In addition, to the extent that Defendant does argue that Plaintiff's EFTA claim fails as a matter of law under any interpretation of the facts because Plaintiff's Account Agreement authorized Defendant to make any charge without liability, Defendant is wrong. Dkt. 18 at 17. As Plaintiff notes, § 1693l provides that "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." Section 1693h(a)(1) then provides that "a financial institution shall be liable to a consumer for all damages caused by . . . the financial institution's failure to make an electronic fund transfer, in accordance with the terms and conditions of an account, in the correct amount or in a timely manner[.]" Because Plaintiff claims that Defendant has made an unauthorized

---

charge Plaintiff $3,371.00". First Amended Complaint ¶99. Similarly, Plaintiff also alleges that "Plaintiff did not provide 2 Brothers Moving with authorization to charge her debit card for $3,371.00. First Amended Complaint, ¶ 82. This is patently incorrect.

The Moving Agreement obtained by Grow as part of investigation attached hereto (Exhibit No. 3) is in writing, signed by Plaintiff, with her "initial" on provision providing blanket authorization to the Mover to charge her Grow credit card "in full" for all charges rendered.

Dkt. 18 at 16–17.

transfer of an incorrect amount of money and because Plaintiff's Account Agreement cannot supersede the EFTA, Plaintiff has stated a cause of action.

## CONCLUSION

This case is simply too fact-specific to dispose of at the motion to dismiss stage. Plaintiff may or may not ultimately prevail, but she has certainly alleged facts that state claims for relief which are plausible on their face. The parties need to conduct discovery and present their opposing cases in full dress at summary judgment.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion to Dismiss (Dkt. 18) is **DENIED**.

(2) Defendant shall file its answer and defenses to Plaintiff's Amended Complaint within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on December 5, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record